UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR -1  P 4: 40

US DISTRICT COURT
BRIDGEPORT CT

DONNA LIN,

      Plaintiff,

      v.

JAMES LOZINSKI,

      Defendant.

CIVIL NO. 3:00cv2045 (AHN)

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Donna Lin ("Lin") has brought suit against Officer James Lozinski ("Lozinski") of the Wethersfield Police Department ("State Police") for false arrest, an illegal search of her car and purse, an illegal seizure of her driver's license, invasion of privacy, and intentional infliction of emotional distress. Claiming qualified immunity, Lozinski filed a Motion for Summary Judgment [Doc. #31] pursuant to Fed. R. Civ. P. 56.

For the reasons that follow below, the motion is DENIED with respect to Lin's claims that Lozinski illegally searched her purse and seized her license. The motion is GRANTED in all other respects.

## FACTS

Based on its careful review of the summary judgment record, the court finds that the following facts are not in dispute:

On the morning of July 14, 2000, Lin was driving during rush-hour traffic on Wells Road, a two-lane road in Wethersfield,

Connecticut, when she struck the car in front of her. Both cars sustained minor damage, and the other driver complained of back and neck pain. Shortly thereafter, Lozinski appeared at the accident scene and observed Lin trying to dial her cell phone while standing on the double-yellow line with her back to on-coming traffic. At least three times, Lozinski used his cruiser's loudspeaker to order her to close the car door and move to the side of the road. Lin failed to respond to Lozinski's instructions.

Believing that Lin was unaware of the danger she was in, Lozinski exited his squad car and escorted her to the side of the road. During this time, he observed her moving slowly in an uncoordinated fashion, having difficulty keeping her balance, and behaving as if she were under the influence of drugs or alcohol. When questioned, Lin told Lozinski that she had rear-ended the car in front of her because she suffered from cataracts and that the glare from the sun had obscured her vision. She denied consuming any alcohol or illegal drugs, and said that she took medication for lupus, an auto-immune disease. Lozinski did not perform field sobriety tests on her.

Despite Lin's explanation that she had not consumed drugs or alcohol before driving, Lozinski remained suspicious about her disoriented state. Consequently, he searched her vehicle and her purse for alcohol or drugs that would explain her appearance. See Lozinski Deposition ("Lozinski Dep.") at 34 ("So I searched

her car looking for evidence of something that may attribute to [her physical impairment]."). More specifically, Lozinski testified that when he searched her purse and removed the driver's license contained therein, he and the purse were in the car. See Lozinski Dep. at 34-35. Lozinski, however, did not locate any drugs or alcohol.

Lin disputes Lozinski's factual account. She testified that she was standing on the street when Lozinski walked up to her and took the purse. In fact, Lin stated that the purse, which contained her wallet and driver's license, was on her person at the time. See Lin Deposition ("Lin Dep.") at 44-45.

Upon completion of this search, Lozinski concluded that Lin's physical impairment was not caused by drugs, alcohol, or an injury from the accident. He consulted with another police officer at the scene and determined that Lin could not safely operate her car in her disoriented condition. Consequently, Lozinski took possession of her driver's license, told her that her license was being suspended, and issued her a ticket for "following too closely" in violation of Conn. Gen. Stat. § 14-240. Lozinski also said that her car would be towed.

Lozinski subsequently drove Lin to work because she was unable to locate a friend or family member who could pick her up. When they arrived at her place of work, Lin was in tears. Lozinski testified that, at Lin's request, he met with her supervisor, Patrice McCarthy ("McCarthy"), to discuss the

3

incident. Lin, however, denies making this request. During this brief meeting, Lozinski stated, among other things, that Lin had been involved in a car collision and that she suffered from lupus. McCarthy did not disclose Lin's medical condition to any other persons at their office. An unnamed co-worker of Lin also may have been present during parts of the meeting.

On August 2, 2000, Lin regained her license from the Connecticut Motor Vehicle Department ("CTDMV"). She later attended a CTDMV hearing on March 14, 2001, in which she was represented by counsel. Her license was neither revoked nor suspended as a result of this hearing.

## STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), cert. denied, 480 U.S. 937 (1987). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After discovery, if the party against whom summary judgment is sought "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then

summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

The substantive law governing a particular case identifies those facts that are material with respect to a motion for summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 258. A court may grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted); <u>see also</u> <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992).

In considering a Rule 56 motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986) (citing <u>Anderson</u>, 477 U.S. at 248; <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 249 (2d Cir. 1985)); <u>see also</u> <u>Ramseur v. Chase Manhattan Bank</u>, 865 F.2d 460, 465 (2d Cir.

1989); Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

## DISCUSSION

Under the facts of this case, the court finds that Lozinski is entitled to qualified immunity on Lin's claims brought under 42 U.S.C. § 1983[1] for false arrest and an illegal search of her car. The court also grants summary judgment to Lozinski on the pendent claims for invasion of privacy and intentional infliction of emotional distress. The court, however, finds that a factual dispute surrounding the search of Lin's purse and the seizure of her license precludes a ruling at this juncture as to whether Lozinski should enjoy qualified immunity for these claims.

---

[1] Title 42 U.S.C. § 1983 provides that any person who, acting under color of law, "subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States shall be liable to the injured party in actions in law. 42 U.S.C. § 1983.

6

I.  <u>The Summary Judgment Record Demonstrates That Plaintiff Was Not Arrested and That Her Car Was Not Illegally Searched</u>

   A.  <u>Qualified Immunity</u>

Qualified immunity shields government actors from liability as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995). When "the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was <u>'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act</u>." <u>Id.</u> (emphasis added). A right is "clearly established" if its contours are sufficiently clear so that a reasonable official would understand his conduct violated that right. See <u>McCullough v. Wyandanch Union Free Sch. Dist.</u>, 187 F.3d 272, 278 (2d Cir. 1999) ("The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct."). If the availability of the qualified immunity defense at summary judgment hinges on disputed issues of material fact, the district court should allow a jury to resolve those factual questions. See, e.g., <u>Coons v. Casabella</u>, 284 F.3d 437, 440 (2d Cir. 2002).

7

B.  False Arrest

A plaintiff bringing a claim for false arrest under § 1983 must prove the following elements: "(1) [that] the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." See Arum v. Miller, 193 F. Supp. 2d 572, 585 (E.D.N.Y. 2002)(citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)).  An individual has a constitutional right not to be arrested without probable cause, see Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997), and "the existence of probable cause is a complete defense to a civil rights claim alleging false arrest," see Garcia v. Gasparri, 193 F. Supp. 2d 445, 449 (D. Conn. 2002) (citing Curley v. Village of Suffern, 268 F.3d 65, 69-70 (2d Cir. 2001)).  Probable cause "exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert. denied, 505 U.S. 1221 (1992).

The court finds that Officer Lozinski's issuance of the traffic ticket to Lin for "following too closely" in violation of Conn. Gen. Stat. § 14-240 did not constitute an arrest.  In the court's view, a ticket for a moving violation, even if it

requires the recipient to appear in traffic court, is not a constitutional seizure because the individual is neither placed in custody nor limited in her freedom of movement in any substantial way. Moreover, Lozinski still had probable cause for issuing the ticket because the undisputed evidence shows that Lin struck the rear of the car directly in front of her. Thus, even under Lin's novel theory that a traffic ticket constitutes an arrest, the court finds that no constitutional violation occurred here and that Lozinski is entitled to qualified immunity on the false arrest claim.

C.   Search of Car

Similarly, the court finds that Lozinski's search of Lin's car was constitutional because he had probable cause under the circumstances to believe the car contained evidence that she was driving while intoxicated. It is well established that a warrantless search is "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (citations and quotation marks omitted). One exception permits an officer to search an automobile and the containers therein without a warrant if he has probable cause to believe that the vehicle contains contraband or evidence of criminal acts. See California v. Acevedo, 500 U.S. 565, 569-70 (1991). The existence of probable cause is determined by

9

examining the "totality of the circumstances." <u>Illinois v. Gates</u>, 462 U.S. 213, 230 (1983).

The court finds that based on the record evidence, Lozinski is entitled to qualified immunity on this claim because the automobile search was based on probable cause and thus consistent with the Fourth Amendment. Although Lin has a clearly established right to be free from an unconstitutional search, there is no dispute as to the following: (1) that Lin rear-ended the car directly in front of her; (2) that she appeared disoriented and uncoordinated immediately thereafter; (3) that she was standing in the middle of a busy two-lane road with her back to on-coming traffic; and (4) that she was slow to respond to Lozinski's orders that she leave the middle of the road. She also has not disputed Lozinski's testimony that she was having difficulty maintaining her balance. Based on these facts, the court finds that Lozinski had probable cause to believe that Lin's car may have contained incriminating evidence of her possible intoxication. Thus, finding no constitutional violation with respect to the car search, the court holds that Lozinski is entitled to qualified immunity on this claim.

II. <u>The Legality of the Purse Search and License Seizure Hinges on Disputed Issues of Material Fact</u>

The legality of Lozinski's warrantless search of Lin's purse and the seizure of her driver's license immediately thereafter hinges on whether the purse was inside the car when Lozinski found and searched it. However, because the parties have offered disparate factual accounts of this central issue, the court is unable to determine at this juncture whether Lozinski should enjoy qualified immunity for these claims.

    A.   <u>Search of Purse</u>

As discussed <u>supra</u> in Part I, a law enforcement officer is permitted to conduct a warrantless search of an automobile and the containers therein if he has probable cause. <u>See</u> <u>Acevedo</u>, 500 U.S. at 569-70. The police may also conduct warrantless searches of an individual's personal property if the search is, among other things, incident to a lawful custodial arrest, <u>see</u> <u>New York v. Belton</u>, 453 U.S. 454, 457-58 (1981), a limited search for weapons as part of a brief, investigatory stop based on reasonable suspicion, <u>see</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 30-31 (1968), or an inventory search following a lawful arrest, <u>see</u> <u>Colorado v. Bertine</u>, 479 U.S. 367, 371-72 (1987). In this case, the <u>Belton</u>, <u>Bertine</u>, and <u>Terry</u> exceptions do not apply because the facts clearly indicate — and Lozinski does not dispute — that Lin was never placed under arrest. Thus, the salient issue is

11

whether the Acevedo automobile exception applies to Lozinski's search of the purse.

Lin and Lozinski offer very different accounts of where Lozinski and the purse were at the time of the search.[2] Lozinski asserts that he found and searched the purse while he was inside the car. According to his testimony, the purse search would have been consistent with the Acevedo automobile exception and entitle him to qualified immunity. In stark contrast, Lin testified that she was standing on the street when Lozinski approached her and seized the purse from her person. Lin further testified that she was "either holding [the purse] or it was dangling off [her] shoulder" when Lozinski took it from her, searched its contents, opened her wallet, and took out her license. See Lin Dep. at 44-46. If a factfinder were to believe Lin, Lozinski's actions would have been illegal because this search would have taken place outside the car and thus would not constitute a valid search under Acevedo. Consequently, in light of this disputed issue of material fact, the court finds that it cannot determine at this juncture whether qualified immunity is applicable to this claim.

Furthermore, the court rejects Lozinski's contention that his actions could properly be considered an inventory search. An

---

[2] The court notes that the summary judgment briefs of both parties failed to identify or discuss this key factual issue. However, the court was able to identify this issue on its own accord by reviewing the deposition transcripts attached to Lozinski's moving papers.

12

inventory search is "an incidental administrative step following arrest and preceding incarceration," and is not part of a criminal investigation itself. Illinois v. Lafayette, 462 U.S. 640, 644 (1983). In this case, Lin was never arrested. Furthermore, Lozinski testified that his purpose for searching her purse was not to inventory her personal items, but to locate evidence that explained her disoriented appearance. See Lozinski Dep. at 34.[3]

In sum, the court finds that a factual dispute as to whether Lozinski was inside the car when he searched Lin's purse precludes a determination at the summary judgment stage that Lozinski is entitled to qualified immunity on this claim.

B.   Seizure of Driver's License

Similarly, the legality of Lozinski's seizure of the driver's license remains a disputed factual issue because, as discussed supra in Part II.A., this seizure was the product of a possibly illegal search of Lin's purse. The exclusionary rule on Fourth Amendment claims prohibits the "evidentiary use of

---

[3] The court also rejects Lozinski's contention that this search was necessitated by "exigent circumstances." The "exigent circumstances" doctrine permits warrantless searches in "those cases where societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence outweigh the reason for prior recourse to a neutral magistrate." Arkansas v. Sanders, 442 U.S. 753, 759 (1979). In this case, "exigent circumstances" were plainly absent. By Lozinski's own admission, Lin was never placed under arrest. The record is also bereft of any testimony that there was a risk that evidence would be destroyed.

13

derivative evidence, both tangible and testimonial," that is acquired as the direct or indirect result of an unlawful search. See Murray v. United States, 487 U.S. 533, 536-37 (1988). As discussed supra, Lin asserts that Lozinski searched her purse — and then proceeded to seize her driver's license — while he was standing in the street. In other words, the seizure of the license was derivative of a possibly illegal search. If a factfinder were to believe Lin's factual account, the court could only conclude that Lozinski should have known that his subsequent seizure of the driver's license also violated the Fourth Amendment. Thus, the court finds that until a jury resolves the factual dispute surrounding the legality of the purse search, it cannot determine the applicability of the qualified-immunity defense to this claim.

Furthermore, the court is unpersuaded by Lozinski's contention that the seizure of the license was legal because § 14-217-1 of the CTMVD regulations permit an officer to take possession of an operator's license "upon the apprehension or arrest of any person . . . unfit . . . to operate a motor vehicle without endangering the safety of the public due to his physical or mental condition." This regulation is inapposite because, as discussed supra, Lozinski never apprehended or arrested her, but merely issued her a traffic ticket. Moreover, the court finds that a reasonable officer should have known that § 14-217-1 does not authorize him to conduct an illegal search of an unarrested

person's purse and then seize her driver's license as part of that search.

In sum, the court finds that a factual dispute regarding the constitutionality of the purse search precludes a determination at summary judgment whether Lozinski is entitled to qualified immunity for the license seizure.

III. <u>Lin's State Law Claims Lack Support in the Summary Judgment Record</u>

In her opposition papers, Lin makes cursory reference to portions of the summary judgment record that purportedly support her claims for invasion of privacy and intentional infliction of emotional distress. The court finds that these pendent claims lack sufficient factual support to survive summary judgment.

    A.   <u>Invasion of Privacy</u>

Lin contends that she has put forth sufficient evidence to defeat Lozinski's motion for summary judgment on her claim of invasion of privacy. The Connecticut Supreme Court has provided four categories in which the tort of invasion of privacy is actionable: "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." <u>Goodrich v. Waterbury Republican-American, Inc.</u>, 448 A.2d 1317, 1329 (Conn. 1982). Lin contends that the

third category applies to her because Lozinski publicized the fact that she suffers from lupus to her work supervisor, Patrice McCarthy, and another co-worker who may have been present when Lozinski spoke to Lin and McCarthy.

The evidence offered by Lin to support this claim is insufficient to survive summary judgment as a matter of law. Lin's cause of action for invasion of privacy requires "publicity," which means "a communication that reaches, or is sure to reach, the public at large." <u>Sidiropoulos v. Bridgeport Hospital</u>, No. CV030401830S, 2004 WL 202256, at *2 (Conn. Super. Jan. 9, 2004) (citations and quotation marks omitted). It is "not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." <u>Id.</u>

In this case, Lozinski's remark that Lin suffered from lupus was communicated to, at most, Ms. McCarthy and the unidentified co-worker. Ms. McCarthy further testified that she had not shared this information with anyone else. Thus, because disclosure to two people hardly qualifies as a communication to the public at large, Lozinski is entitled to summary judgment on the privacy claim.

B.  <u>Intentional Infliction of Emotional Distress</u>

Similarly, Lin's claim for intentional infliction of emotional distress fails for want of sufficient evidence. This tort has four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." <u>DeLaurentis v. New Haven</u>, 597 A.2d 807, 828 (Conn. 1991). The extreme and outrageous conduct referenced in the second requirement must exceed "all possible bounds of decency, and [should] be regarded as atrocious, and utterly intolerable in a civilized community." <u>Appleton v. Board of Education</u>, 757 A.2d 1059, 1062 (Conn. 2000) (quotation marks and citations omitted). Stated differently, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." <u>Id.</u> (quotation marks and citations omitted).

Based on its review of the summary judgment record, the court finds that even assuming Lin had presented evidence to satisfy the other three elements, Lozinski's conduct did not constitute atrocious behavior intolerable in a civilized society. Although the court's review of the record reveals that Lozinski's

17

brusque communications with Lin were far from being a model of courtesy, his actions were neither extreme nor outrageous. Furthermore, the search of her car and purse, the seizure of the license, and the disclosure that she suffered from lupus do not constitute conduct that is "atrocious, and utterly intolerable in a civilized community." Appleton, 757 F.2d at 1062. Thus, because the court finds that Lozinski's behavior is "merely insulting [and] displays bad manners," id., the court grants Lozinski's motion for summary judgment with respect to this pendent claim.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. #31] is GRANTED in part and DENIED in part.

SO ORDERED this 27 day of February, 2004, at Bridgeport, Connecticut.

```
                                    _____
                                         Alan H. Nevas
                                    United States District Judge
```