UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA LIN<br>Plaintiff | : | CIVIL ACTION<br>NO. 3:00CV 2045 (AHN)(HBF) |
| V. | : | |
| JAMES LOZINSKI<br>Defendant | : | July 20, 2004 |

## <u>JOINT TRIAL MEMORANDUM</u>

1.    <u>Trial Counsel:</u>

<u>Plaintiff</u>                                      <u>Defendant</u>
Norman Pattis                              Robert A. Rhodes
Williams & Pattis                          Halloran & Sage, LLP
51 Elm Street, Suite 409             315 Post Rd. West
New Haven, CT 06510                 Westport, CT 06880
(203) 562 9931                             (203) 227-2855

2.    <u>Jurisdiction:</u>

Original jurisdiction based on 42 U.S.C. § 1983.

3.    <u>Jury-Nonjury:</u>

This matter will be tried to a jury.

**4.    Trial Time:**

Trial time estimated to be 1 day of evidence.

**5.    Nature of Case:**

The present matter arises from the search of the plaintiff's purse and seizure of her driver's license following a motor vehicle accident which occurred on July 14, 2000. The plaintiff claims that Officer Lozinski searched her purse and first took possession of her license as she was standing on the roadside. Officer Lozinski claims that the search and seizure occurred while he searched the passenger compartment of her motor vehicle.

**6.    Plaintiff's Contentions:**

The plaintiff contends that the search of her purse and seizure of her license were unreasonable and violated her rights under the Fourth Amendment.

**7.    Defendant's Contentions:**

The defendant contends that the plaintiff's purse was searched and the defendant first took possession of her license during the search of the plaintiff's motor vehicle. The defendant contends that these acts were reasonable under the facts and circumstances known to the defendant. The defendant also contends that he is entitled to qualified immunity.

**8.    Legal Issues:**

The court, in ruling on the Defendant's Motion for Summary Judgment, has narrowed the legal issues down to one issue: Did Officer Lozinski search the plaintiff's purse and take possession of her license during his search of her motor vehicle.  All other claims have been disposed of by the court.

**9.    Stipulations of Law and Fact:**

a.    At all relevant times, the defendant was acting under color of state law.

b.    On July 14, 2000, the plaintiff's vehicle collided with the rear end of a vehicle in front of her while traveling in a heavy slow moving line of traffic on Wells Hill Road in Wethersfield, CT.

c.    Officer Lozinski of the Wethersfield Police Department responded to the scene of the accident.

d.    During the course of his investigation, Officer Lozinski searched the plaintiff's purse and seized the plaintiff's driver's license and forwarded it to the Department of Motor Vehicles.

e.    On August 2, 2000, the plaintiff retrieved her driver's license from the Department of Motor Vehicles.

**Contested Issues of Fact and Law:**

The parties contest the location of the plaintiff's purse and license at the time they were initially seized by the defendant.

**10.    Plaintiff's List of Witnesses:**

1.    Donna Lin, will testify about the facts and circumstances surrounding the search of her purse and seizure of her license. Estimated time of testimony is one (1) hours.

2.    Officer James Lozinski.  Officer Lozinski will testify about the facts and circumstances surrounding the search of the plaintiff's vehicle and seizure of her license.  Estimated time of testimony is 30 min.

**Defendant's List of Witnesses:**

1.    Officer James Lozinski.  Officer Lozinski will testify about the facts and circumstances surrounding the search of the plaintiff's vehicle and seizure of her license.  Estimated time of testimony is 30 min.

2.    Sergeant Dave Warner.  Sergeant Warner will testify about his observations at the scene of the motor vehicle accident involving the plaintiff.  Estimated time of testimony is 30 min.

**11.    (a)    Plaintiff's Exhibits**

1.    Motor vehicle infraction issued to plaintiff.

**11.    (b)    Defendant's Exhibits:**

501.    Wethersfield Police Case Incident Report - including narrative reports, witness statements, property inventories, initial medical report of plaintiff, etc.

502.    Letter written to the Department of Motor Vehicles regarding the seizure of the plaintiff's license.

**12.    Deposition Testimony:**

None.

**13(a). <u>PLAINTIFF'S PROPOSED JURY INSTRUCTIONS</u>**

1.      The plaintiff has brought this lawsuit to obtain redress for what she contends were violations of her rights under the United States Constitution, specifically his right to be free from false arrest and unreasonable search. Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprive that individual of any of his constitutional rights. "Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, a police officer or a municipality. In this case, the plaintiff has met her burden of proving that the defendants acted under color of law, so you need not concern yourselves with that issue. [Monroe v. Pape, 365 U.S. 167 (1961); Pitchell v. Callan, 13 F.3d 545 (2d Cir. 1994); Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994); Stengel v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).]

2.      It is not necessary to find that the defendants had any specific intent to deprive the plaintiff of her civil rights in order to find in favor of the plaintiff. The plaintiff is entitled to win her case if the defendant intended the actions which resulted in the violation of the plaintiff's rights or if the defendant acted in reckless disregard of the plaintiff's rights. Reckless disregard of the plaintiff's rights simply means not caring whether or not those rights were being violated. [Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989); Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989); Stengel v. Belcher, 522 F.2d 438 (6th Cir. 1975); Gregory v. City of Rogers, 921 F.2d 750, 755-57 (8th Cir. 1990) (Timbers, J.); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Caballero v. City of Concord, 956 F.2d 204 (9th Cir. 1992); Presnick v. Santoro, 832 F. Supp. 521, 528 (D. Conn. 1993) (Cabranes, J.).]

3.      The testimony of a police officer is entitled to no special or exclusive

sanctity. An officer who takes the witness stand subjects his testimony to the

same examination and the same tests that any other witness does and in the

case of police officers you should not believe them merely because they are so

employed. You should recall their demeanor on the stand, their manner of

testifying, the substance of their testimony, and weigh and balance it just as

carefully as you would the testimony of any other witness. People employed by

the government, including police officers, do not stand in any higher station in the

community than other persons, and their testimony is not entitled to any greater

weight. [Wright & Havanich, CONN. JURY INSTRUCTIONS, (2d Ed.) §§667.]

4.      If you find that the defendant is liable to the plaintiff on any of the grounds advanced in this lawsuit, you should then consider the question of damages. There are essentially two kinds of damages which can be awarded in a lawsuit -- compensatory damages and punitive damages. Compensatory damages are designed to compensate the plaintiff for injuries suffered by the plaintiff. These injuries include money actually spent or debts incurred as a result of the injury, as well as emotional anguish, impairment of reputation, personal humiliation, and other suffering. In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of the defendant. Among the elements of injury and harm for which compensation may be awarded are:

a) The physical harm to the plaintiff during and after the impairment or injury received, including imprisonment and loss of freedom;

b) The emotional harm to the plaintiff during and after the impairment or injury received, including emotional distress or pain, humiliation, personal indignity, embarrassment, fear, anxiety and/or anguish which the plaintiff has suffered or may with reasonable certainty be expected to suffer in the future;

c) Lost wages or earnings;

d) Attorney fees or other expenses and costs of legal representation;

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ▪ Westport, CT 06880 ▪ (203) 227-2855 ▪ Juris No. 412195

e) Medical bills or expenses.

Actual loss is not limited to expenses or debts incurred. Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation. You should award damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated. The damages you award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of loss I have previously discussed with you. [Memphis Community School District v. Stachura, 477 U.S. 299 (1986); Wheatley v. Beetar, 637 F.2d 863, 865-68 (2d Cir. 1981); Ellis v. Blum, 643 F.2d 68, 82-84 (2d Cir. 1981); Walters v. City of Atlanta, 803 F.2d 1135 (11th Cir. 1986); Johnson v. Franklin, 112 Conn. 228, 229, 152 Atl. 64 (1930); Childs v. Bainer, 35 Conn. App. 301, 304 (1994); Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987); Jeffries v. Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992).]

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ▪ Westport, CT 06880 ▪ (203) 227-2855 ▪ Juris No. 412195

5.    You may also decide whether the plaintiff is entitled to the award of any punitive damages against the defendant. In a case like this one, you may consider whether acts or omissions of the defendant, if you find them to have been proved, were so serious that the defendant should pay a penalty so that in the future others will be deterred from engaging in the same conduct. Whether you decide to award any punitive damages should be based on whether you find that the defendant engaged in any one of the following things:

1) Willful or malicious violation of the constitutional rights of the plaintiff;

2) Any intentional act by the defendant in gross disregard of the rights of the plaintiff;

3) Reckless disregard by the defendant of whether or not he was violating the rights of the plaintiff.

If you find any one of these three things to have been proven, then you should award punitive damages. [Smith v. Wade, 461 U.S. 30 (1983); Stolberg v. Board of Trustees, 474 F.2d 489 (2d Cir. 1973); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); Larez v. City of Los Angeles, 946 F.2d 630, 648-49 (9th Cir. 1991); Wright v. Sheppard, 919 F.2d 665, 670-73 (11th Cir. 1990).]

6.    The purpose of punitive damages awards is both punishment and deterrence, and in deciding whether to award punitive damages and, if so, fixing the amount of such damages, the jury acts as the conscience of the community. In fixing the amount of punitive damages, it is appropriate for the jury to consider all of the same factors which a trial judge would consider in imposing sentence in a criminal case. These factors include the behavior of the defendant at trial and his or her apparent lack of genuine repentance for the misconduct in question, if you find such to be the case. [Hall v. Ochs, 817 F.2d 920 (1st Cir. 1987); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988); Zarcone v. Perry, 572 F.2d 52 (2d Cir. 1978).]

7.    A police officer may not arrest a person without an arrest warrant unless he has probable cause to believe that a crime has been committed and that the person in question has committed that crime. Probable cause exists if the facts and circumstances known to the defendant, or of which he had reasonably trustworthy information, are sufficient to warrant a prudent police officer in believing that the suspect has committed a crime. The hunch, guess, conjecture or surmise of an officer is not enough, and there must be enough actual evidence to lead reasonably to the conclusion that the suspect has committed a crime. Thus, if you find that the defendant arrested the plaintiff without probable cause, you must find the defendant liable for a violation of the plaintiff's constitutional rights. [Dunaway v. New York, 442 US. 200 (1979); Brown v. Texas, 443 U.S. 47 (1979); Henry v. United States, 361 U.S. 98 (1959); Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Thamel v. Town of East Hartford, 373 F.Supp. 455 (D.Conn. 1974) (Newman, J.).]

8.    In Connecticut, the word nolle is a shortened version of the legal term nolle prosequi, which means literally "I will not prosecute." A nolle prosequi is a formal entry upon the record by the prosecuting attorney, declaring that he or she will not prosecute the case any further. (Black's Law Dictionary 1198 (Rev., 4th Ed. 1968); Cann, Nolle Prosequi in Connecticut, 4 CONN. L. REV. 117, 118 (1971).] The entry of a nolle prosequi terminates the prosecution and requires that the defendant be released from custody. [Conn. Practice Book §§727]. In 1781, the Connecticut Supreme Court defined a nolle prosequi in this way: "Where the State's Attorney enters a nolle it is to be intended that there was no cause of action; and it is more conclusive than an acquittal of the Grand Jury." [State v. Stanley, 2 Kirby 25 (1787).]

**13(b)  <u>Defendants' Proposed Jury Instructions</u>:**

I.      <u>UNREASONABLE SEARCH AND SEIZURE</u>

In the present case, the plaintiff claims that Officer Lozinski's search of her purse and seizure of her driver's license were unconstitutional. The Fourth Amendment to the U.S. Constitution provides that no citizen shall be subject to unreasonable searches and seizures. In this case, Officer Lozinski has stated that he searched the plaintiff's purse in order to determine the existence of drugs or alcohol. Officer Lozinski has further testified that he took possession of the plaintiff's license because he did not feel that her physical condition left her with the ability to safely operate a motor vehicle. Therefore, you must decide if Officer Lozinski's actions were reasonable under all of the facts and circumstances present at the time.

I.    (a) MOTOR VEHICLES

Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident or public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office.  Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officer, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." [1/]

In considering the search of the plaintiff's purse, when police officers have probable cause to believe that there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle." [2/] Additionally, the ability to conduct a warrantless search of a motor vehicle is not affected by the fact that a car has been in an accident or has

_____

[1/]    Cady v. Dombrowski, 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L.Ed. 2d 706 (1973)

[2/]    Michigan v. Thomas, 458 U.S. 259; 102 S. Ct. 3079, 73 L. Ed. 2d 750 (1982), citing Chambers v. Maroney, 399 U.S. 42 (1970)

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ▪ Westport, CT 06880 ▪ (203) 227-2855 ▪ Juris No. 412195

otherwise been immobilized.[3/]  Therefore, I will instruct you that if you find that Officer Lozinski searched the plaintiff's purse and took possession of her license while he was searching the passenger compartment of her vehicle, then you must find, as a matter of law, that his search was reasonable.

---

3/    Id.

I.      (b) <u>C.G.S. § 14-217-1</u>

In evaluating the seizure of the plaintiff's license, you must also consider the appropriate Connecticut law concerning the seizure of an individual's driver's license. Section 14-217-1 of the Motor Vehicle Department regulations states that:

> Upon the apprehension or arrest of any person operating a motor vehicle on the highways of this state who in the judgment of the officer in charge of any established police barracks, precinct or police station is an unfit person to operate a motor vehicle without endangering the safety of the public due to his physical or mental condition, the operator's license os such person shall be suspended and such officer may, in the name and behalf of the commissioner, take possession of the operator's license of such person and forward the same to the commissioner's office within twenty-four hours, together with a brief statement and explanation of the offense or violation.

In this case, Officer Lozinski claims that he had reason to believe that the plaintiff was unfit to operate her vehicle and that he was authorized by this statute to seize her license. If you that Officer Lozinski's belief was reasonable under the facts and circumstances present on July 14, 2000 and that his actions were authorized by the statute I have just recited to you, you must find in his favor.

II.    <u>EXIGENT CIRCUMSTANCES</u>

Officer Lozinski also claims that he is entitled to judgement in his favor because his conduct was justified by exigent circumstances.  Exigent circumstances are exceptions to the need for a search warrant.  They have been found to exist only in those cases where societal costs of obtaining a warrant, such as danger to law officers outweigh the reason for prior recourse to the court to obtain a warrant.[4]  Also, a search may be justified if the life or person of a law-enforcement officer or other person is in imminent danger. [5]

For example, "If at the moment of arrest an accused lapses into what appears to be a diabetic coma the arresting officer may search in his pockets, and if he was in an automobile look, in the glove compartment for emergency medication." [6]

In this case, Officer Lozinski claims that one of his reasons for searching the plaintiff's purse was to determine is she was taking any medication which could explain her physical and mental condition following the accident.  If you find that, under the facts and circumstances present, that exigent circumstances

---

[4]    <u>U.S. v. Gorski</u>, 852 F.2d 692 (2nd Cir. 1988), *citing* <u>Arkansas v. Sanders</u>, 442 U.S. 753, 759 (1979)

[5]    <u>U.S. v. Zabre</u>, 871 F.2d 282, 289 (2d Cir. 1989)(citations omitted)

[6]    <u>Amador-Gonzalez v. U.S.</u>, 391 F.2d 308, 320 (5th Cir. 1968)(Godbold, J., concurring)

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ■ Westport, CT 06880 ■ (203) 227-2855 ■ Juris No. 412195

existed which justified Officer Lozinski's search of the plaintiff's purse, you must

render a verdict in his favor.

::ODMA\MHODMA\Manage;537600;1

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ▪ Westport, CT 06880 ▪ (203) 227-2855 ▪ Juris No. 412195

III.    QUALIFIED IMMUNITY - FEDERAL LAW

In the present case, Officer Lozinski also claims that he is entitled to qualified immunity for his actions in searching the plaintiff's purse and seizing her driver's license.  To establish qualified immunity, Officer Lozinski must demonstrate that his conduct did not violate any of the plaintiff's clearly established rights, that would have been known to a reasonable person at the time, or in the alternative, that it was objectively reasonable for him to believe that his actions did not violate any of those clearly established rights.  To put it another way, the objective reasonableness test is met - and Officer Lozinski is entitled to qualified immunity - if officers of reasonable competence could disagree as to whether the search of the plaintiff's purse and seizure of her license were reasonable under all of the circumstances which existed on July 14, 2000.

The availability of qualified immunity does not turn on whether the defendants violated the plaintiff's rights; qualified immunity is a defense. [7] You need reach the issue of qualified immunity only if you have determined that Officer Lozinski's search of the plaintiff's purse and seizure of her license violated her rights under the Constitution.

_____

[7]    Lennon v. Miller, 66 F.3d 416, 422, 423 (2nd Cir. 1995).

::ODMA\MHODMA\Manage;537600;1

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ▪ Westport, CT 06880 ▪ (203) 227-2855 ▪ Juris No. 412195

Should you find that Officer Lozinski's search of the plaintiff's purse and/or

seizure of her licence violated the constitution, he is still entitled to immunity if

you find that it was objectively reasonable for Officer Lozinski to have believed

that his search of the plaintiff's purse and the seizure of her driver's license did

not violate any of the plaintiff's rights under the Fourth Amendment in light of the

facts and circumstances which existed on July 14, 2000.

We have recognized that it is inevitable that law enforcement officials will in
some cases reasonably but mistakenly conclude that probable cause is present,
and we have indicated that in such cases those officials--like other officials who
act in ways they reasonably believe to be lawful--should not be held liable.

In the present case, you must decide whether Officer Lozinski could

reasonably believe that he could search the passenger compartment of a vehicle

and the operator's purse in a situation where an operator, following an accident,

demonstrates an obvious physical or mental impairment.

IV.    CREDIBILITY OF WITNESSES

The jury determines the credibility of witnesses and the weight to be given to their testimony.  No fact is determined merely by the number of witnesses testifying for or against.  It is quality, not quantity, of testimony that controls.

The credibility of a witness may be impaired or completely destroyed by impeaching testimony, such as illegal or criminal conduct on the part of the witness.  It may have been impeached by cross-examination; it may be affected by the appearance of the witness upon the stand; by his or her interest in the outcome; or by evident ignorance to facts to which he or she testifies.  You may consider these matters in weighing the testimony in this case.

In passing on the credibility of each of the witnesses, there are certain considerations you may well have in mind:

> Ask whether the story a witness has told
> is plausible.  Does it ring true?  Or are
> there inconsistencies in it?  How does it
> fit in with other evidence in the case that
> you believe and other facts you find to
> have existed?  Does it mesh with that
> evidence and those facts?

You may well ask yourselves in passing on the credibility of any witness whether that witness has any bias or prejudice with regard to any party to the action and, if so, whether he or she has permitted that bias or prejudice to color their testimony. A jury should always bear in mind that if a witness has a decided bias or prejudice, or has interest in the outcome of the case, that there lurks the temptation to sway or shade one's testimony.  In assessing witnesses' testimony, you may properly apply your own knowledge of human nature and of the motives that influence and control human action.  You have the right to bring to bear upon testimony in court the same tests of veracity that would be used in the every day affairs of life.  You are at liberty within your own sound judgment to choose what testimony you will believe and to discard in whole or in part the testimony of any others.

It is your duty as jurors to harmonize the evidence as far as it reasonably can be done.  You are to test the evidence of the several witnesses by your own knowledge of human nature and of the motives which influence and control human nature, using the same good judgment which you apply to facts which are daily presented to you for your consideration and decision.

Wright and Ankerman, Connecticut Jury
Instructions, Volumes I and II, §§ 318,
640,641, 645 (4th ed. 2000);
Connelly v. Connecticut Co., 107 Conn. 236
(1928).

::ODMA\MHODMA\Manage;537600;1

HALLORAN & SAGE
ATTORNEYS AT LAW
315 Post Road West ▪ Westport, CT 06880 ▪ (203) 227-2855 ▪ Juris No. 412195

**14.    Anticipated Evidentiary Problems:**

None at this time.

**15.    Further Proceedings:**

The defendant has filed a Motion to Bifurcate the Issue of Punitive

Damages.

**16.    Proposed Voir Dire Questions:**

**Plaintiff's Voir Dire Questions:**

1.    This is a lawsuit for civil rights violations brought by a citizen against police

officers. Is there any reason why you would have difficulty being completely

neutral and fair in deciding this case if you are chosen to serve on the jury?

2.    Is there anyone here who would prefer not to sit on a jury concerning a

case of this kind?

3.    Does anyone here feel for any reason that citizens who believe that they

have been treated illegally and unfairly should not bring suit against police

officers? If so, please explain.

4.    Have you or anyone close to you ever been employed as a policeman or

by any law enforcement agency in any capacity? If so, please explain.

5.    Have you or anyone close to you ever been employed by any municipality

in the State of Connecticut?

6.    Has anyone here or anyone close to you ever been employed by any

other Governmental unit in the State of Connecticut or elsewhere?

7.    Do you know or have you read anything or heard anything about this case, the plaintiff or the defendants or any of the lawyers involved in the case?

8.    Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.    Has anyone here or anyone close to you ever been involved in any political campaigns or elections in the State of Connecticut?

10.    Has anyone here or any close to you ever been employed by an attorney?

11.    Would you for any reason tend to favor one side or the other in this case or in regard to the evidence which may be presented?

12.    Other things being equal, would you tend to trust or believe the testimony of a police officer more or less than that of an ordinary citizen merely because the testimony came from a police officer?

13.    Does anyone here have any feeling that the testimony of a police officer is entitled to greater or lesser weight or believability than that of a civilian?

14.    Have you or anyone close to you ever been the victim of a crime?

15.    Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with policemen or law enforcement?

16.    Have you or anyone close to you ever been arrested?

17.     Has anyone here ever witnessed an arrest?

18.     Have you, or has anyone close to you, ever been a party to a lawsuit? If so, please explain.

19.     Where are you employed?

20.     If you are married, is your spouse connected in any way with any police department or other law enforcement agency or is he or she employed by any municipality?

## Defendants Voir Dire Questions:

1.     Have you or your family had any type of negative contact with the police which would interfere with your ability to be fair and impartial in this case.

2.     Have you or any members of your immediate family ever been subject to arrest by police officers.

3.     Have you or any members of your immediate family ever been subject to the use of force by police officers.

4.     Have you or any members of your immediate family ever made a claim or brought a lawsuit against a police officer or other law enforcement agent or agency.

5.    Have you or any members of your family ever had their driver's license suspended or revoked.

6.    Have you or any members of your family suffered from any disease or medical condition which limited your ability to operate a motor vehicle.

7.    Have you or any members of your family ever been diagnosed with lupus.

8.    Have you or any members of your family ever suffered from a degenerative disease or medical condition.

9.    Have you or any members of your family ever suffered from cataracts.

DEFENDANT,

JAMES LOZINSKI


BY: _____

    Robert A. Rhodes

    Fed. Bar #ct13583

    HALLORAN & SAGE

    315 Post Road West

    Westport, CT 06880

    Its Attorneys


PLAINTIFF

DONNA LIN


BY:_____

    Norm Pattis

    Fed. Bar #ct13120

    Williams and Pattis, LLC

    51 Elm Street, Suite 409

    New Haven, CT 06510

## CERTIFICATION

This is to certify that on this 20th day of July, 2004, I hereby mailed a copy of the foregoing to:

Norman Pattis, Esq.

Williams and Pattis, LLC

51 Elm Street, Suite 409

New Haven, CT 06510

Robert A. Rhodes

537600.1(HS-FP)

::ODMA\MHODMA\Manage;537600;1